# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# EASTERN DIVISION

**HUNTER HOLLINGSWORTH,**

    **Plaintiff,**

**v.**                                      No. 1:18-cv-01233-STA-jay

**TENNESSEE WILDLIFE RESOURCES
AGENCY, KEVIN HOOFMAN,
UNITED STATES FISH AND WILDLIFE
SERVICE, and KYLE LOCK,**

    **Defendants.**

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

Before the Court is Defendants Kevin Hoofman, Kyle Lock,[1] and the United States Fish and Wildlife Service's Motion to Dismiss (ECF No. 34) filed August 2, 2019. Plaintiff Hunter Hollingsworth has responded in opposition, and Defendants have filed a reply. The Motion to Dismiss is now ripe for determination. For the reasons set forth below, the Motion is **GRANTED**.

## BACKGROUND

On November 20, 2018, Plaintiff Hunter Hollingsworth filed a Complaint for the violation of his constitutional rights pursuant to 42 U.S.C. § 1983 as well as violations of the Tennessee Constitution and Tennessee statutory and common law. According to the Complaint, Plaintiff owns hunting and fishing property in Benton County, Tennessee. (Compl. ¶ 7.) In

---

[1] The Complaint misspells Defendant Kyle Lock's surname as "Locke." Because the pleadings name "Kyle Locke" as a party, the docket also spells Lock's last name with an "e." The Clerk of Court is directed to correct the spelling of Defendant Lock's last name on the docket.

1

January 2018, Plaintiff discovered a camera mounted to a tree on his property and installed in such a way so as to monitor Plaintiff's coming and going at the property. (*Id.* ¶ 12.) The camera had no markings, so Plaintiff removed it and stored it for safe keeping. (*Id.* ¶ 13.) An SD storage card in the camera contained photographs of two men whom Plaintiff believes to be Defendants Kevin Hoofman and Kyle Lock. (*Id.* ¶ 14.) The Complaint alleges that Hoofman is an agent of the Tennessee Wildlife Resources Agency and that Lock is an agent of the United States Fish and Wildlife Service. (*Id.* ¶¶ 4, 6, 8.)[2] Plaintiff's property is posted and accessible only by crossing the property of two other landowners, and the tree where Defendants installed the camera is on the interior of Plaintiff's property. (*Id.* ¶¶ 9, 10.) The Complaint alleges that Defendants entered the property and installed the camera in violation of Plaintiff's Fourth Amendment rights under the U.S. Constitution as well as his rights under the Tennessee Constitution. (*Id.* ¶ 16.) Plaintiff would also hold Hoofman and Lock liable for criminal and common law trespass under Tennessee law. (*Id.* ¶ 17.)

In their Motion to Dismiss, Defendants now argue that the Complaint fails to state a claim for relief and, in the alternative, that Hoofman and Lock are entitled to qualified immunity. Defendants first argue that under the "open field" doctrine, the act of placing a camera on Plaintiff's property did not actually infringe on Plaintiff's Fourth Amendment rights. The United States Supreme Court has held that an owner has no expectation of privacy in open fields, whether actual open field or a thickly wooded area, even where the property is posted and the state actor's entry upon the property constitutes a trespass. Plaintiff's hunting and fishing

---

[2] The Complaint originally named the Tennessee Wildlife Resources Agency as a party to the action. The parties later stipulated to the dismissal of the agency based on the state of Tennessee's sovereign immunity and the fact that the state is a not a "person" for purposes of 42 U.S.C. § 1983. Jt. Stip. of Dismissal, March 22, 2019 (ECF No. 20).

property falls within the ambit of the open field doctrine. As such, Defendants contend that Plaintiff has failed to allege a plausible violation of the Fourth Amendment.

Additionally, Defendants argue that even if the Complaint has alleged such a violation, the specific contours of the right were not clearly established. Should the Court conclude that the open field doctrine does not apply to the placement of a camera on Plaintiff's property, then the Court should go on to conclude that this right or exception was not clearly established in 2017 at the time when the camera was allegedly installed. Under the circumstances, Defendants argue that they are entitled to qualified immunity. In their final argument for dismissal, Defendants contend that as a federal agency, the U.S. Fish and Wildlife Agency enjoys sovereign immunity from suit. For all of these reasons, the Court should dismiss the Complaint against Defendants.

Plaintiff has filed a response in opposition. Plaintiff begins by conceding his claims against the U.S. Fish and Wildlife Agency based on the doctrine of sovereign immunity. As for his remaining claims against Hoofman and Lock, Plaintiff argues, apparently as a factual matter, that the tree where Defendants placed the camera does not meet the definition of an open field. Plaintiff emphasizes that Defendants had to traverse two other gated, fenced properties to reach the interior of Plaintiff's property where the tree stands. Plaintiff further argues that the Fourth Amendment is not only concerned with privacy in property but privacy in one's person, analogizing the placement of a surveillance camera on private property to placing a listening device in a public telephone booth or a tracking device underneath an automobile. And according to Plaintiff, Article I, section 7 of the Tennessee Constitution affords even greater privacy protection than the Fourth Amendment to the U.S. Constitution. Plaintiff argues that the Court should hold then that the use of the camera was an unreasonable search in violation of

3

Plaintiff's constitutional rights. As for qualified immunity, Plaintiff maintains that the law against unreasonable searches and seizures was well established at the time of the search in light of the Supreme Court's decisions in *Katz v. United States*, 389 U.S. 347 (1967) and *Jones v. United States*, 565 U.S. 400 (2012).

In their reply, Defendants maintain that the open field doctrine applies in this case. Defendants answer Plaintiff's argument concerning *Katz* and the reasonable expectation of privacy and show that even Judge Harlan in his concurrence in *Katz* recognized the distinction between a home and an open field. Defendants also argue that *Jones* and the installation of a GPS tracking device on a vehicle as an investigatory technique is distinguishable. The Supreme Court in *Jones* found that a vehicle is a personal "effect" and falls squarely within the zone of privacy protected by the Fourth Amendment. *Jones* specifically contrasted a home with an open field and explained that an open field is not one of the protected areas listed in the Constitution. In other words, nothing in these cases shows that the open field doctrine would not apply in this circumstance. Furthermore, Defendants continue to argue that they are entitled to qualified immunity. Plaintiff has cited no authority for his claim that the use of the camera amounts to a search of his person by electronic means or that such a right was clearly established at the time of the placement of the camera. Therefore, Defendants are entitled to the dismissal of Plaintiff's claims.

## **STANDARD OF REVIEW**

A defendant may move to dismiss a complaint "for failure to state a claim upon which relief can be granted" under Federal Rule of Civil Procedure 12(b)(6). In order to avoid dismissal under Rule 12(b)(6), a plaintiff must include in its pleading "either direct or inferential allegations respecting all material elements necessary for recovery under a viable legal theory."

*Luis v. Zang*, 833 F.3d 619, 625–26 (6th Cir. 2016) (quoting *Kreipke v. Wayne St. Univ.*, 807 F.3d 768, 774 (6th Cir. 2015)). When assessing the sufficiency of a complaint, the Court must view its factual allegations in a light most favorable to the plaintiff. *Taylor v. City of Saginaw*, 922 F.3d 328, 331 (6th Cir. 2019) (citing *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012)). While the Court must accept all of the well-pleaded factual allegations of the pleading as true, the Court need not accept legal conclusions masquerading as fact claims. *Wood v. Moss*, 572 U.S. 744, 757 n.5 (2014) (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)).

Under Rule 8 of the Federal Rules of Civil Procedure, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal,* 556 U.S. at 681; *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). In the final analysis, the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

"The doctrine of qualified immunity protects government officials from liability for civil damages 'unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct.'" *Wood*, 572 U.S. at 757 (quoting *Ashcroft v. al–Kidd,* 563 U.S. 731, 735 (2011)). Qualified immunity shields government officials not just from liability but also the need to stand trial and shoulder "the other burdens of litigation." *Iqbal*, 556 U.S. at 672 (citing *Mitchell v.*

*Forsyth*, 472 U.S. 511, 526 (1985)). "The basic thrust of the qualified-immunity doctrine is to free officials from the concerns of litigation," particularly "disruptive discovery." *Id.* at 685 (citing *Siegert v. Gilley*, 500 U.S. 226, 236 (1991)). So courts should resolve the defense "as early as possible," *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998), even at the pleadings stage. *Johnson v. Fankell*, 520 U.S. 911, 915 (1997) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

## ANALYSIS

The primary issue presented in Defendants' Rule 12(b)(6) Motion is whether the Complaint states a plausible claim for the violation of Plaintiff's Fourth Amendment rights. Before it reaches that issue, the Court notes that in his response to the Motion to Dismiss, Plaintiff has conceded his claims against the U.S. Fish and Wildlife Agency. The Sixth Circuit has remarked that "the plaintiff remains the master of its complaint" and that, if the plaintiff "concedes that it is not bringing a claim," then the district court "should take it at its word." *NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 458 (6th Cir. 2007). In light of Plaintiff's concession about his claims against the federal agency, the Court will dismiss the U.S. Fish and Wildlife Agency as a party. Therefore, the Motion to Dismiss is **GRANTED** as to this Defendant.

### I. Fourth Amendment Claims Under 42 U.S.C. § 1983/*Bivens*

Turning now to the merits of Plaintiff's federal constitutional claims, 42 U.S.C. § 1983 creates a "species of tort liability" for the violation of rights guaranteed in the Constitution itself. *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 916 (2017) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 417 (1976)). Section 1983 imposes liability on a "person who, under color of any statute, ordinance, regulation, custom or usage, of any State" subjects another to "the deprivation of any rights, privileges, or immunities secured by the Constitution or laws." 42 U.S.C. § 1983. In

*Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1974), the Supreme Court recognized a right of action similar to § 1983 against federal employees who violate an individual's constitutional rights. "Under the *Bivens* line of cases, the Supreme Court has recognized a cause of action against federal officials for certain constitutional violations when there are no alternative processes to protect the interests of the plaintiff and no special factors counseling against recognizing the cause of action." *Koubriti v. Convertino*, 593 F.3d 459, 466 (6th Cir. 2010).[3]

Under § 1983 and *Bivens*, the Court's "threshold inquiry" is "to identify the specific constitutional right" at issue and then apply the relevant elements and rules of an action to vindicate the right. *Manuel*, 137 S. Ct. at 916 (quotation omitted). In this case the parties agree that Plaintiff's claims implicate the Fourth Amendment, which guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV. The Fourth Amendment has as its "basic purpose . . . to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." *Carpenter v. United States*, 138 S. Ct. 2206, 2213 (2018) (quoting *Camara v. Mun. Court of City and Cnty. of San Francisco*, 387 U.S. 523, 528 (1967)). Still, the Constitution specifies "with some precision the places and things encompassed by its protections": persons,

---

[3] The Complaint cites § 1983 and alleges that Hoofman acted in his capacity as an employee of the State of Tennessee and that Lock acted in his capacity as a federal agent. In their Motion to Dismiss, however, Defendants assert that both Hoofman and Lock acted under color of federal law, and so *Bivens* applies. At the pleadings stage, the Court is bound to accept the Complaint's allegations about each Defendant's status as true.

For purposes of Defendants' Motion to Dismiss, the subtle distinctions between a *Bivens* action and § 1983 appear to be immaterial. *King v. United States*, 917 F.3d 409, 433 (6th Cir. 2019) (noting that liability under *Bivens* is indistinguishable from an analogous claim under § 1983) (citing *Butz v. Economou*, 438 U.S. 478, 500–04 (1978)); *see also Iqbal*, 556 U.S. at 675–76 (stating that *Bivens* actions are the "federal analog to suits brought against state officials under . . . 42 U.S.C. § 1983") (quoting *Hartman v. Moore*, 547 U.S. 250, 254 n.2 (2006)).

houses, papers, and effects. *Fla. v. Jardines*, 569 U.S. 1, 6 (2013) (citing *Oliver v. United States*, 466 U.S. 170, 176 (1984)).

Here Plaintiff alleges that Defendants' warrantless installation of a camera on his property amounted to an unconstitutional search in violation of his Fourth Amendment privacy interests. In the context of real property, the Fourth Amendment protects "houses" against unreasonable searches. The touchstone of the Fourth Amendment since the Founding has been "overriding respect for the sanctity of the home." *Oliver*, 466 U.S. at 178 (collecting cases). For purposes of the Fourth Amendment, the "house" is not simply the four walls of a living space or abode. "[A] person's 'house' encompasses the dwelling and a circumscribed area of surrounding land that is given the name 'curtilage.'" *Collins v. Virginia*, 138 S. Ct. 1663, 1681 (2018) (Alito, J., dissenting) (citing *Oliver*, 466 U.S. at 180). "The protection afforded the curtilage is essentially a protection of families and personal privacy in an area intimately linked to the home, both physically and psychologically, where privacy expectations are most heightened." *Collins*, 138 S. Ct. at 1670 (citing *Calif. v. Ciraolo,* 476 U.S. 207, 212–13 (1986)). What makes up the curtilage is "fact-intensive" and determined "on a case-by-case basis." *United States v. Coleman*, 923 F.3d 450, 455 (6th Cir. 2019) (citation omitted).[4] In sum, the curtilage, although not always easily defined, is that part of the property "to which the activity of home life extends," for example, a front porch. *Jardines*, 569 U.S. at 7 (quoting *Oliver*, 466 U.S. at 182 n.12).

---

[4] The Supreme Court has devised a four-factor test for "defining the extent of a home's curtilage": (1) the proximity of the area claimed to be curtilage to the home, (2) whether the area is included within an enclosure surrounding the home, (3) the nature of the uses to which the area is put, and (4) the steps taken by the resident to protect the area from observation by people passing by. *United States v. Dunn*, 480 U.S. 294, 301 (1987). In this case there is no real dispute that the contested "search" did not occur in Plaintiff's "house" or the curtilage of a house.

And what about the property owner's other real property, private property that is not itself the owner's home or the curtilage of the home? All of the real property extending beyond the house and curtilage the Supreme Court has dubbed "open field." *Collins*, 138 S. Ct. at 1681 (citing *Oliver*, 466 U.S. at 180). The distinction between house and open field is "as old as the common law." *Hester v. United States*, 265 U.S. 57, 59 (1924). The government's intrusion upon an open field is not considered a search of the "house," the reason being that "open fields do not provide the setting for those intimate activities that the Amendment is intended to shelter from government interference or surveillance" and, perhaps to a lesser extent, open fields "usually are accessible to the public and the police in ways that a home, an office, or commercial structure would not be." *Oliver*, 466 U.S. at 179. All of which is to say that the Fourth Amendment does not "prevent all investigations conducted on private property," including investigations conducted in or from open fields. *Id.* Constitutionally speaking, "there is no constitutional difference between police observations conducted while in a public place and while standing in the open fields." *United States v. Dunn*, 480 U.S. 294, 304 (1987).

In light of the foregoing, the Court holds that Plaintiff has failed to state a plausible Fourth Amendment claim against Hoofman or Lock. The Complaint alleges that Plaintiff owns farming and hunting property and that both agents trespassed upon Plaintiff's land to install a camera, presumably for the purpose of monitoring Plaintiff's movements on the property. Plaintiff alleges that he found the camera on a tree in a location designed to record Plaintiff as he entered and exited the property. Plaintiff further alleges that his property was posted and landlocked by two other parcels. Even accepting these claims as true, however, they do not add up to a Fourth Amendment violation. Nothing in the Complaint implies that Plaintiff had a home on the property, much less that Defendants used the camera to surveil Plaintiff in his home or its

9

curtilage. It follows that Defendants mounted the camera in what can only be described as "open field," an area beyond the scope of the Fourth Amendment's protections. Without some particular allegation to show that Defendants conducted a warrantless search of his home or the curtilage of the home, Plaintiff has failed to allege a Fourth Amendment violation.

The Court finds that the facts of the Complaint are squarely on point with the facts addressed by the Sixth Circuit in its unreported decision in *Spann v. Carter*, 648 F. App'x 586 (6th Cir. 2016). The plaintiff in *Spann* alleged that agents of the Tennessee Wildlife Resources Agency and the U.S. Fish and Wildlife Service had violated his Fourth Amendment rights by installing multiple cameras on his hunting property. *Spann*, 648 F. App'x at 588. The cameras recorded the plaintiff leading turkey hunts on the property, a violation of the plaintiff's probation on federal charges of hunting without a license and illegally transporting the antlers of a "monster buck" across state lines. *Id*. at 587. The district court dismissed the plaintiff's § 1983 complaint for failure to state a claim, and the Sixth Circuit affirmed. *Id*. at 588. The Court of Appeals reasoned that the plaintiff's "private farm" and hunting property constituted an "open field," and the agents did not therefore violate the plaintiff's Fourth Amendment rights by installing cameras on the property. *Id*. And the panel noted that the use of a camera did "not transform their surveillance into a search requiring a warrant." *Id*. at 589 (citing *United States v. Vankesteren,* 553 F.3d 286, 291 (4th Cir. 2009)).

While *Spann* is not binding, the Court finds it persuasive and nearly factually indistinguishable. *Hood v. Keller*, 229 F. App'x 393, 398 n.5 (6th Cir. 2007) ("Unpublished decisions of this court do not constitute binding precedent. However, they may constitute persuasive authority 'especially where there are no published decisions which will serve as well.'"). Like the plaintiff in *Spann*, Plaintiff alleges that TWRA and U.S. Fish and Wildlife

10

agents violated the Fourth Amendment by installing a surveillance camera on his private hunting property. And like the plaintiff in *Spann*, Plaintiff's property is, for purposes of the Constitution, an open field lacking the privacy protections of the Fourth Amendment. Nothing in the Complaint or Plaintiff's arguments demonstrates to the Court why the same analysis in *Spann* should not control the result in this case.

Furthermore, *Spann* is consistent with decisions from other federal courts which have held that the use of cameras by federal and state game officials to monitor private property did not violate the constitutional rights of the property owner. *See Vankesteren*, 553 F.3d at 291, *cert. denied*, 129 S. Ct. 2743 (2009) (holding that a state wildlife officer's use of a hidden video camera to record illegal trapping in an open field on private property did not violate the Fourth Amendment); *Love v. Coats*, No. 4:14CV00715 SWW, 2015 WL 3972959, at *4 (E.D. Ark. June 30, 2015) ("Because the surveillance took place in an open field, Coats was free to install cameras on Love's property without violating the Fourth Amendment.").

None of the other incidental circumstances alleged in the Complaint alter the Court's conclusion. Plaintiff alleges that Defendants had to commit a trespass in order to reach the tree, which stood in the "interior" of Plaintiff's land, where they placed the surveillance camera. The Supreme Court considered the same issue in *Oliver* and concluded that "in the case of open fields, the general rights of property protected by the common law of trespass have little or no relevance to the applicability of the Fourth Amendment." *Oliver*, 466 U.S. at 183–84 ("The law of trespass, however, forbids intrusions upon land that the Fourth Amendment would not proscribe."); *see also United States v. Jones*, 565 U.S. 400, 420–21 (2012) (Alito, J. concurring) ("[A] trespass on open fields, as opposed to the 'curtilage' of a home, does not fall within the scope of the Fourth Amendment because private property outside the curtilage is not part of a

11

'hous[e]' within the meaning of the Fourth Amendment."). And the use of a camera on a tree, even a tree adjacent to a driveway within a posted area, does not violate the Fourth Amendment. *Johnson v. Weaver*, 248 F. App'x 694, 696–97 (6th Cir. 2007) (holding that a driveway constitutes an open field despite the owner's "efforts to shield that area from any manner of unwelcome guest"); *see also United States v. Rapanos,* 115 F.3d 367, 372–73 (6th Cir. 1997) ("[The] presence of fences, closed or locked gates, and 'No Trespassing' signs on an otherwise open field . . . has no constitutional import").

For his part Plaintiff argues that his theory of relief is not just that Defendants violated his rights by "searching" his property. Plaintiff claims that Defendants' surveillance violated his reasonable expectation of privacy, presumably privacy in his movements through the property, and not merely his ownership interest in the property. Plaintiff primarily relies on the Supreme Court's decision in *Katz v. United States*, 389 U.S. 347 (1967) for the proposition that "the Fourth Amendment protects people, not places." *Katz*, 389 U.S. at 351. It is true that *Katz* "expanded [the] conception of the [Fourth] Amendment to protect certain expectations of privacy as well" but only so long as the expectation is "one that society is prepared to recognize as reasonable." *Carpenter v. United States*, 138 S. Ct. 2206, 2213 (2018) (citing *Katz*, 389 U.S. at 351). Plaintiff analogizes his expectation of privacy in this case with the Supreme Court's holding in *Jones* that "the Government's installation of a GPS device on a target's vehicle, and its use of that device to monitor the vehicle's movements, constitutes a 'search.'" *Jones*, 565 U.S. at 404.

The Court finds, though, that the Supreme Court's open field decision in *Oliver* forecloses Plaintiff's argument. *Oliver* in no way overruled *Katz* or undermined its expectation of privacy test. *Oliver*, 466 U.S. at 176 n.6; *Allinder v. State of Ohio*, 808 F.2d 1180, 1184–85

(6th Cir. 1987) ("*Oliver* did not overrule the holding in *Katz* . . . that the fourth amendment protects persons and not places."). *Oliver* addressed largely the same argument Plaintiff makes here and concluded "that the open fields doctrine, as enunciated in *Hester*, is consistent with the plain language of the Fourth Amendment and its historical purposes" and "accords with the 'reasonable expectation of privacy' analysis developed in subsequent decisions of this Court," including *Katz*. *Oliver*, 466 U.S. at 184. And following *Oliver*, the Sixth Circuit has consistently held that a property owner has no reasonable expectation of privacy in an open field. *E.g. United States v. Houston*, 813 F.3d 282, 288 (6th Cir. 2016); *United States v. Anderson-Bagshaw*, 509 F. App'x 396, 403–04 (6th Cir. 2012) (holding that a "barnyard" and "pasture" constituted "open fields" where the property owner had no reasonable expectation of privacy); *United States v. Mathis*, 738 F.3d 719, 731 (6th Cir. 2013) (holding that a property owner's subjective expectation of privacy in an open field was unreasonable). Plaintiff simply had no reasonable expectation of privacy in his open field property. The Court holds then that its application of the open field doctrine does not conflict with *Katz* or the reasonable expectation of privacy test.

This leaves Plaintiff's argument that Defendants' use of a surveillance camera to track his movements is analogous to the impermissible use of other forms of technology like GPS to track a citizen's movements. Although Plaintiff relies on *Jones*, the Court finds that *Jones* is distinguishable. The Supreme Court's holding in *Jones* resulted in no small part from its determination that a car met the Fourth Amendment's definition of an "effect" and was therefore within the constitutionally protected zone of privacy. *Jones*, 565 U.S. at 404 ("It is beyond dispute that a vehicle is an 'effect' as that term is used in the Amendment."). So while *Jones* is instructive, installing surveillance equipment on a suspect's "effect" is hardly the same as installing surveillance equipment in an open field. Whatever tension may exist between *Oliver*

13

and its open field doctrine and the Supreme Court's other line of Fourth Amendment cases involving the use of technology to monitor a citizen's movements, this Court is bound to apply *Oliver* and the Sixth Circuit's reading of it.

Therefore, the Court holds that Plaintiff has failed to allege a violation of his Fourth Amendment rights, and Defendants are entitled to judgment as a matter of law for this reason alone.

**II. Qualified Immunity**

Even if Defendants' use of a surveillance camera on Plaintiff's property could be said to have violated Plaintiff's constitutional rights, Defendants would still be entitled to qualified immunity. "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *City of Escondido, Calif. v. Emmons*, 139 S. Ct. 500, 503 (2019) (quoting *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (*per curiam* )).[5] However, the constitutional right "must be defined with specificity" and not "at a high level of generality." *Id*. This means that the "contours" of the right must be so definite that "any reasonable official in the defendant's shoes would have understood that he was violating it." *Id*.

The Court holds that even if the use of a surveillance camera on Plaintiff's hunting property violated Plaintiff's Fourth Amendment rights, the specific parameters of such a right were not so well defined in 2017 that a reasonable officer would have known that his conduct violated the Constitution. As the Court has already noted, *Oliver* and the Sixth Circuit precedent applying it clearly stand for the proposition that police surveillance conducted from an open field

---

[5] The Supreme Court has held that the same qualified immunity analysis applies whether a claim is brought under 42 U.S.C. § 1983 or *Bivens*. *Wilson v. Layne*, 526 U.S. 603, 609 (1999) ("Although this case involves suits under both § 1983 and *Bivens*, the qualified immunity analysis is identical under either cause of action.").

14

does not run afoul of the Fourth Amendment. At the very least, the Sixth Circuit's unreported decision in *Swann* held that the same agencies (TWRA and U.S. Fish and Wildlife) using the same technique (mounting a camera) on the same kind of open field property (a hunting camp) did not violate the property owner's constitutional rights. While it is true that the Supreme Court has directly addressed the use of other technologies like GPS (*Jones*) and cell site location data (*Carpenter*) to track a suspect's movements, the Supreme Court has never applied the same reasoning in those cases to the use of a camera in an open field. This Court cannot say then that the right to be free from surveillance conducted from an open field was so clearly established at the time that a reasonable agent would have known that his conduct was unconstitutional. Therefore, the Court concludes as an alternative holding that Hoofman and Lock would be entitled to qualified immunity.

### III. Supplemental Jurisdiction

The Complaint could be read to allege claims for the violation of the Tennessee Constitution and other claims under Tennessee law. *See* Compl. ¶ 1 (stating that Plaintiff brought suit under the U.S. Constitution and 42 U.S.C. § 1983 as well as Article I, section 7 of the Tennessee Constitution, Tennessee common law, and Tenn. Code Ann. §§ 39–14–405, 406). Insofar as Plaintiff has asserted claims under Tennessee law, the Court has discretion to take jurisdiction over these claims only by virtue of 28 U.S.C. § 1367(a), which grants district courts "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

Having now dismissed the claims over which it has original subject-matter jurisdiction, the Court must next determine whether it should exercise supplemental jurisdiction over

Plaintiff's state law claims. "With respect to supplemental jurisdiction in particular, a federal court has subject-matter jurisdiction over specified state-law claims, which it may (or may not) choose to exercise." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009). "[I]f there is some basis for original jurisdiction, the default assumption is that the court will exercise supplemental jurisdiction over all related claims." *Veneklase v. Bridgewater Condos, L.C.*, 670 F.3d 705, 716 (6th Cir. 2012) (*Campanella v. Commerce Exch. Bank,* 137 F.3d 885, 892 (6th Cir. 1998)). However, district courts may decline to exercise supplemental jurisdiction over a related claim if any of the following circumstances apply:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.
>
> 28 U.S.C. § 1367(c).

Even when one of these statutory conditions applies, the district court may nevertheless exercise supplemental jurisdiction over state law claims "if recommended by a careful consideration of factors such as judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350 (1988). The district court enjoys "broad discretion" in this regard. *Phaneuf v. Collins*, 509 F. App'x 427, 434 (6th Cir. 2012) (citing *Musson Theatrical, Inc. v. Fed. Express Corp.,* 89 F.3d 1244, 1254 (6th Cir. 1996)).

The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining claims under Tennessee law. "When district courts dismiss all claims independently qualifying for the exercise of federal jurisdiction, they ordinarily dismiss as well all related state claims." *Artis v. Dist. of Columbia*, 138 S. Ct. 594, 597–98 (2018). In this case, Plaintiff's § 1983 and *Bivens*

claims were the basis of the Court's federal question jurisdiction under 28 U.S.C. § 1331.  The Court has concluded that the Complaint fails to state a plausible claim for relief under federal law.  Under the circumstances, the Court declines to retain jurisdiction over Plaintiffs' various Tennessee law claims.  Therefore, the Court **DISMISSES** those claims without prejudice to re-file them in the courts of the state of Tennessee.

## CONCLUSION

Defendants' Motion to Dismiss is **GRANTED**.  All of Plaintiff's claims against the U.S. Fish and Wildlife Agency are dismissed with prejudice.  The Complaint fails to state a plausible claim against Hoofman or Lock for the violation of Plaintiff's Fourth Amendment rights, and even if it had, Hoofman and Lock would be entitled to qualified immunity.  The federal constitutional claims against Hoofman and Lock are dismissed with prejudice.  The Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining claims under state law pursuant to 28 U.S.C. § 1367(c)(3).  Plaintiffs' state law claims against Hoofman and Lock are dismissed without prejudice.

**IT IS SO ORDERED.**

s/ S. Thomas Anderson
S. THOMAS ANDERSON
CHIEF UNITED STATES DISTRICT JUDGE

Date: October 21, 2019.